UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JEFF POFF,

                       Plaintiff,

v.                                        Case No. 25-cv-1122-pp

ANDREA BLEECKER, *et al.*,

                       Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Plaintiff Jeff Poff, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

      On September 23, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $0.81. Dkt. No. 7. The court received that fee on October 9,

2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. The court will require the plaintiff to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

  B. The Plaintiff's Allegations

The complaint names as defendants registered nurses Andrea Bleecker, Kataryna A., Erin W. and Sabotta; Nurse Practitioner Wesner; Physical Therapist Edward Rothbauer; Advanced Practice Nurse Prescriber (APNP) Tonya M.; and Health Services Unit (HSU) Manager J. Wenzel. Dkt. No. 1 at ¶¶3–10. All the defendants work at Waupun, and the plaintiff sues them in their individual capacities. Id.

The plaintiff alleges that on April 21, 2025, he was the victim of an assault at Waupun, from which he suffered a severe neck injury.[1] Id. at ¶11. The plaintiff alleges that nurses Bleecker and Kataryna were on duty in the RHU (restricted housing unit), where officers had brought him in a restraint chair. Id. at ¶12. The plaintiff alleges that he repeatedly told these nurses that his neck was bothering him and that he could not move it, but they ignored him and "told him that he shouldn't have been fighting." Id. The plaintiff insisted that his neck was broken and that he needed an x-ray or an MRI, but the nurses laughed and

---

[1] This assault is the subject of the plaintiff's other recent case pending before this court. See Poff v. Nelson, et al., Case No 25-cv-1110.

told him that he would "heal up like a damn dog and there's nothing you can do about it." Id. (underlining omitted).

The plaintiff alleges that from April 22, 2025 through July 23, 2025 (when he wrote this complaint), he submitted twenty-one requests for medical treatment and a half-dozen or more requests for refills of his medication. Id. at ¶13. He says that Nurse Sabotta responded to some of these requests and told him that medical staff had explained multiple times that he did not need treatment for his neck, that Nurse Practitioner Wesner did not need to see him and that he did not need an x-ray or an MRI. Id. The plaintiff attached to his complaint four of these requests that he submitted on May 27 and 28, 2025. Dkt. No. 1-1. Sabotta responded to one of the plaintiff's requests, "You have been told multiple times that you do not need any treatment for neck concerns. Your NP does not need to see you again. She told you this on 5/16." Id. at 3. She responded to another, "You do not need to see NP. She already told you [on] 5/16 no xray, no follow up needed." Id. at 4. Her other responses are similar and recount that the plaintiff had been given a referral for physical therapy. Id. at 2.

The plaintiff alleges that sometime around June 8, 2025, he saw Rothbauer in the hallway "while being escorted on a pass." Dkt. No. 1 at ¶13. He says that Rothbauer told him, "good luck trying to get rehab for ur neck, you should have tought [*sic*] about that before you started filling [*sic*] complaints against us." Id. The plaintiff says that Nurse Erin W. also told him, "it can take up to '3-months' for rehab or longer to heal you." Id. (underlining omitted).

The plaintiff alleges that on June 9, 2025, he met with HSU Manager Wenzel in person after complaining to the Governor of Wisconsin through the Office of Public Affairs. Id. at ¶14. He says that Wenzel promised him "that she would look into his all[e]gations about the delay [*sic*]/denial of med treatment,

and retaliation by her staff." Id. But he says that Wenzel never took any action, and that "she was either fired and[/]or removed from her post" at Waupun. Id. The plaintiff alleges that he still has not received medical treatment for his neck injury. Id.

The plaintiff claims that Bleecker and Kateryna violated his Eighth Amendment rights when they refused to see or treat him on April 21, 2025. Id. at ¶16. He claims that Sabotta violated his rights by refusing to provide him medication or medical treatment in response to his requests on May 27 and 28, 2025. Id. at ¶17. He claims that Nurse Erin violated his rights when she told him that it could take three months or longer for his neck to heal using rehabilitative treatment. Id. at ¶18. He claims that Rothbauer violated his rights under the Eighth and First Amendments by denying him physical therapy in retaliation for the plaintiff's earlier complaints against medical staff. Id. at ¶19. He claims that defendants Wesner and Tonya violated his Eighth Amendment rights by refusing to adequately treat his neck injury or provide "real nerve damage meds such as gabapentin, and or Lyrica" instead of Tylenol or other "cheap over the counter meds." Id. at ¶20 (underlining omitted). Finally, he asserts that Wenzel violated his rights by not addressing his allegations against other medical staff and correcting their actions. Id. at ¶21.

The plaintiff seeks compensatory and punitive damages. Id. at p.9. He also seeks a permanent injunction ordering Wesner, Tonya, Erin and Sabotta to provide him offsite medical care from an orthopedist or chiropractor to address his alleged neck injury, imaging tests to determine the extent of his injury and any other "special med treatment" to address his concerns. Id.

C. Analysis

The court analyzes the plaintiff's allegations about his inadequate medical care under the Eighth Amendment. See Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837). "The standard of deliberate indifference 'requires more than negligence or even gross negligence; the plaintiff instead must show that the defendants were essentially criminally reckless, that is, ignored a known risk.'" Stewart v. Wexford Health Sources, Inc., 14 F.4th 757, 763 (7th Cir. 2021) (quoting Huber v. Anderson, 909 F.3d 201, 208 (7th Cir. 2018)).

The plaintiff's allegations of severe pain from his neck injury satisfy the objective component of an Eighth Amendment claim. Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002). The remaining question is whether the plaintiff's allegations satisfy the subjective component against each official.

The plaintiff first claims that Nurses Bleecker and Kateryna violated his rights when they disregarded his concerns about his neck immediately after the alleged assault on April 21, 2025. He says that the nurses taunted him and told him that he would "heal like a dog." Although some of these allegations are difficult to believe, the court must accept them as true for the purposes of screening And taking those allegations as true, they are sufficient to show that

Bleecker and Kateryna were aware of the plaintiff's serious medical concern but disregarded it and refused to provide treatment. The court will allow the plaintiff to proceed on this claim.

The plaintiff next claims that Nurse Sabotta violated his Eighth Amendment rights by responding to his treatment requests by telling him that he was not approved for imaging tests. These responses did not violate the plaintiff's rights. The plaintiff does not allege that Sabotta personally saw or treated him; he alleges only that she responded to some of his treatment requests. And the responses that she provided—some of which the plaintiff attached to his complaint—show that she merely gave the plaintiff the same information that his medical provider had given after a previous appointment. As a nurse, Sabotta was permitted to "defer to instructions given by physicians unless 'it is apparent that the physician's order will likely harm the patient.'" Holloway v. Delaware Cnty. Sheriff, 700 F.3d 1063, 1075 (7th Cir. 2012) (quoting Berry v. Peterman, 604 F.3d 435, 443 (7th Cir. 2010)). The plaintiff's exhibits do not suggest that his provider's orders exposed him to harm, and the court may consider those exhibits as part of the complaint. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). These exhibits show that Nurse Practitioner Wesner examined the plaintiff on May 16, 2025 and told him that there was no clinical indication for an x-ray, MRI or other specialized treatment for his neck pain. Wesner prescribed physical therapy based on an examination of the plaintiff and his symptoms. The plaintiff's dissatisfaction with his diagnosis or his treatment is not a basis for liability under the Eighth Amendment. See Lewis v. Sood, 126 F.4th 525, 531–32 (7th Cir. 2025); Johnson v.

7

Dominguez, 5 F.4th 818, 826 (7th Cir. 2021) The court will dismiss defendant Sabotta.

The plaintiff also has not stated a claim against Nurse Erin. His only allegation against Nurse Erin is that she told him it could take three months or longer for the plaintiff's neck to heal through rehabilitation. He does not allege that Nurse Erin personally saw him or treated his neck issues or refused to do so. As the court explained, the plaintiff's "personal disagreement with his diagnoses and treatment, without more," is not a basis for liability under the Eight Amendment. Lewis, 126 F.4th at 531. The court will dismiss Nurse Erin.

The plaintiff claims that physical therapist Rothbauer refused to provide physical therapy. But he does not allege that he had a referral or prescription for treatment with Rothbauer. Nor does he allege that he ever asked Rothbauer for physical therapy and that Rothbauer refused. The plaintiff alleges only that he saw Rothbauer once in a hallway as the plaintiff was being escorted to another part of the prison, and Rothbauer told the plaintiff that he would have a hard time "trying to get rehab" because of complaints the plaintiff had filed against medical staff. At most, these allegations suggest that Rothbauer taunted the plaintiff, which rarely is enough to violate the Eighth Amendment. See Lisle v. Welborn, 933 F.3d 705, 718–19 (7th Cir. 2019) (citing Beal v. Foster, 803 F.3d 356, 357–58 (7th Cir. 2015) (explaining that taunting may violate the Eighth Amendment when it amounts to "cruel infliction of mental pain," such as by "encourag[ing] an inmate known to be suicidal and in the midst of a mental health crisis to take his own life").

The plaintiff also claims that Rothbauer's actions constituted retaliation in violation of the First Amendment. But again, the plaintiff does not allege that Rothbauer *did anything* that could have violated his rights. To state a First

Amendment claim of retaliation, the plaintiff must allege that "he engaged in a protected activity," "he suffered a deprivation likely to prevent future protected activity" and "his protected activity was a motivating factor in the defendants' decision to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783). Although the plaintiff's earlier complaints against medical staff are protected conduct, see Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020), he has not alleged that Rothbauer took any adverse action against the plaintiff in retaliation for those earlier complaints. Rothbauer's alleged comment about the difficulty the plaintiff would have seeking physical therapy is insufficient to state a claim against him under either the Eighth or the First Amendment. The court will dismiss defendant Rothbauer.

The plaintiff next claims that Nurse Practitioner Wesner and APNP Tonya violated his Eighth Amendment rights by failing to prescribe him gabapentin or Lyrica for his neck pain and instead prescribing him Tylenol and other medications. "But the Eighth Amendment does not entitle incarcerated patients to their preferred pain medication." Arce v. Wexford Health Sources Inc., 75 F.4th 673, 681 (7th Cir. 2023) (citing Arnett v. Webster, 658 F.3d 742, 754 (7th Cir. 2011)). And the medications available to the plaintiff as an incarcerated person necessarily are limited because of the frequency of diversion and misuse of medications in prisons. See id. ("There are many reasons for doctors to tread carefully when prescribing strong pain medications."); Strasser v. Larson, Case No. 22-CV-1398, 2025 WL 1503798, at *8 (E.D. Wis. May 27, 2025) (citing Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996)) ("Prison doctors have an obligation to consider all of the risks when determining which painkillers are appropriate, including the risk of abuse within the prison setting."). The plaintiff

cannot proceed against Wesner or Tonya solely because they did not provide him the pain medication he wanted. The court will dismiss these defendants.

Finally, the plaintiff claims that HSU Manager Wenzel failed to correct the actions of the other medical defendants after the plaintiff wrote to the governor, and that Wenzel told the plaintiff that she would "look into" the plaintiff's allegations about his delayed or denied treatment. The plaintiff does not allege that Wenzel personally saw or treated him. He says only that Wenzel was the manager of the HSU. Supervisory government officials, like Wenzel, "may not be held liable for the unconstitutional conduct of their subordinates." Iqbal, 556 U.S. at 676. They may be held liable based only on their own "knowledge and actions, not on the knowledge or actions of persons they supervise." Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009). Although the plaintiff says that Wenzel was aware of his complaints, "inaction following receipt of a complaint about someone else's conduct is not a source of liability." Estate of Miller by Chassie v. Marberry, 847 F.3d 425, 428 (7th Cir. 2017). And the plaintiff suggests that Wenzel may have been fired or removed from her post, which could suggest that she was unable to address the plaintiff's concerns rather than that she disregarded them. The court will dismiss defendant Wenzel.

The plaintiff seeks damages and injunctive relief ordering defendants Wesner, Tonya, Erin and Sabotta to provide him appropriate medical treatment. But the court is dismissing those defendants, so he may not proceed against them for any form of relief. Even if he could, "section 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." Greenawalt v. Ind. Dep't of Corr., 397 F.3d 587, 589 (7th Cir. 2005) (citing Luder v. Endicott, 253 F.3d 1020, 1024–25 (7th Cir. 2001)). Because the plaintiff has sued all the defendants in their individual capacities

10
Case 2:25-cv-01122-PP   Filed 11/20/25   Page 10 of 13   Document 9

only, he may proceed only on his request for damages and may not proceed on his request for injunctive relief.

The court will allow the plaintiff to proceed on an Eighth Amendment claim against Nurses Bleecker and Kateryna. He may not proceed on any other claim or against any other defendant. The court advises the plaintiff, as it did in the order screening his other case, that he will need to support his claim with evidence. If the evidence shows that the plaintiff's claim undeniably is false, so that no reasonable jury could believe it, the court has the authority to impose sanctions on the plaintiff—including dismissal of this lawsuit—for filing a frivolous, malicious and/or fraudulent lawsuit against these medical officials. See Sanders v. Melvin, 25 F.4th 475, 481 (7th Cir. 2022) (citing Ayoubi v. Dart, 640 F. App'x 524, 528–29 (7th Cir. 2016)).

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Nurses Erin W. and Sabotta, Nurse Practitioner Wesner, Edward Rothbauer, APNP Tonya M. and HSU Manager J. Wenzel.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on Nurses Andrea Bleecker and Kateryna A. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$349.19** balance of the filing fee

by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution, where the plaintiff is incarcerated.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 20th day of November, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**