UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JEFF POFF,

Plaintiff,

v. Case No. 25-cv-1122-pp

ANDREA BLEECKER
and KATARYNA KRAINYK,

Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 14), DENYING AS MOOT PLAINTIFF'S MOTION TO AMEND COMPLAINT (DKT. NO. 19), DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME (DKT. NO. 19), DENYING AS MOOT PLAINTIFF'S MOTION TO INTRODUCE ADDITIONAL EVIDENCE (DKT. NO. 28), GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT KRAINYK (DKT. NO. 33) AND DISMISSING CASE WITHOUT PREJUDICE**

---

Plaintiff Jeff Poff, who is incarcerated at Waupun Correctional Institution and is representing himself, filed this case under 42 U.S.C. §1983. The court screened the complaint and allowed the plaintiff to proceed on an Eighth Amendment medical care claim based on allegations that the defendants, Andrea Bleecker and Kataryna Krainyk, disregarded his concerns about his neck immediately after a correctional officer assaulted him on April 21, 2025. Dkt. No. 9 at 6. The defendants have filed a motion for summary judgment on exhaustion grounds, dkt. no. 14, and the plaintiff has filed a motion for leave to file an amended complaint or for an extension of time to respond to the defendants' summary judgment motion, dkt. no. 19, a motion to introduce additional evidence, dkt. no. 28, and a motion to dismiss defendant Krainyk,

dkt. no. 33. The court will grant the defendants' motion for summary judgment, deny as moot the plaintiff's motion for leave to amend, deny as moot the plaintiff's motion for an extension of time, deny the plaintiff's motion to submit additional evidence, grant the plaintiff's motion to dismiss Krainyk and dismiss the case without prejudice.

## I. Plaintiff's Motions for Leave to Amend or for Extension of Time (Dkt. No. 19) and Motion to Dismiss Defendant Krainyk (Dkt. No. 33)

On April 27, 2026, two weeks after the defendants filed their motion for summary judgment on exhaustion grounds, the plaintiff filed a motion to amend the complaint and/or requesting extension of time to respond to defendants' motion for summary judgment on exhaustion grounds. Dkt. No. 19. The plaintiff states that after reading the defendants' motion for summary judgment, he realized that "either he named the wrong defendants in his ICE Complaint and or had defendants name[s] mixed up[.]" Id. He says he needs time to research to ensure the proper names of the defendants. Id.

One week later, on May 4, 2026, the court received the plaintiff's response to the defendants' motion for summary judgment, which includes a supporting brief, response to the defendants' proposed findings of fact, a declaration and exhibits. Dkt. Nos. 20-25. The plaintiff's response includes arguments that he misidentified the names of the defendants in his administrative complaint documents. Dkt. No. 21. The plaintiff's response was timely filed, so the court will deny as moot his motion for an extension of time. And because the plaintiff filed a response to the motion for summary judgment, the court will deny as moot his motion to amend the complaint.

After the defendants' motion for summary judgment was fully briefed, the plaintiff filed a motion to dismiss defendant Krainyk. Dkt. No. 33. The court will grant that motion.

## II. Defendant's Motion for Summary Judgment on Exhaustion Grounds (Dkt. No. 14)

### A. Facts

The plaintiff was confined at Waupun Correctional Institution during the events described in the complaint. Dkt. No. 16 at ¶1. The defendants worked at Waupun as nurse clinicians 2 during that time. Id. at ¶2.

According to the defendants, the plaintiff filed one potentially relevant complaint related to the claims and incidents at issue in this lawsuit: WCI-2025-6950. Id. at ¶3. The plaintiff states that he filed a second inmate complaint relevant to his claims: WCI-2025-6356. Dkt. No. 22 at ¶3.

#### 1. *WCI-2025-6950*

On May 19, 2025, the institution complaint examiner's (ICE) office received WCI-2025-6950, in which the plaintiff listed the date of incident as May 12, 2025. Dkt. No. 16 at ¶4. The complaint states in relevant part:

> On the above date I submitted an HSR doc 3035 to HSUM J. Wenzel regarding (N-P) Michelle K (refusing) to provide the proper med treatment for a (serious) neck injury by ordering MRI, X-ray, and/or neck brace in order to 1) prevent injury to worsen, and 2) determine the extent of injury. And (RN) R. Sabett responded stating, any nurse will reply to HSR submitted per HSU protocol and provider saw you on 5/6, no further imaging or brace is indicated. Follow plan of care. This is now a delay/denial of med treatment.

Id. at ¶¶5-8; Dkt. No. 17-2 at 11. In the health services request (HSR) which the plaintiff referenced in WCI-2025-6950, he complained that Nurse

Practitioner Michelle K. ignored his requests for an MRI and a neck brace. Dkt. No. 16 at ¶9. The plaintiff directed this HSR to the attention of the health services manager (HSM) and said that only HSM Wenzel could respond. Id. at ¶10. Nurse Sabotta replied to the plaintiff's HSR, stating that after the plaintiff's appointment with his provider, no further imaging or brace was prescribed. Id. at ¶11. Nurse Sabotta also wrote that any nurse could respond to an HSR. Id. at ¶12.

The ICE determined that the crux of the plaintiff's complaint was that Nurse Sabotta had responded to an HSR that was directed to HSM Wenzel. Id. at ¶13. The ICE recommended that WCI-2025-6950 be dismissed on the grounds that area supervisors (such as HSM Wenzel) could delegate the responsibility of triaging mail (including HSRs) to their subordinates (such as Nurse Sabotta). Id. at ¶14. The reviewing authority (RA) dismissed the complaint, agreeing with the ICE that nursing staff was the frontline for triaging HSRs. Id. at ¶15.

The plaintiff submitted an appeal to the corrections complaint examiner (CCE). Id. at ¶16. The appeal states:

> C. Schmude who's now considered a defendant on this lawsuit for (purposely) mislabeling this complaint, and failure to properly investigate my issues, which got to do with Jane doe (N.P.) refusing to order (MRI) to the severe neck injury that I acquire on 4/24/25, failure to provide adequate med treatment delay of med care for same injury, and (P.T.) Jon doe for forcing me to wait up to (4 months) to be seen, and retaliation, causing me to possible have permanent severe neck nerve damage for delaying my treatment, Nurse Sabotta is guilty of retaliation, delay of med care/denial of med treatment Nurse Erin, and Jane Doe Nurse are both guilty of falsifying legal docs on this same incident, as well as another vicious assault that I received on 5/14/25 when I acquire a (R-eye) broken

> socket that needed stitchez and never got done leaving a permanent 3 inch scar, L-wrist injury that I now suffer severe (nerve) damage to L-hand, both knees when Lt. Griperton used excessive force/ tased me while handcuffed to strip cage/made me fall on both knees, R-separated shoulder, Nurse (Erin and Jane Doe) they're both (also) guilty of denial of med treatment, deliberate indifference, as well as N-P (Lisa S) who saw me on 5/16/25 and also falsified legal docs/failed to provide adequate med care by not ordering (x-rays) and or MRI, not even ice to help swelling go down, Lt. Griperton is also guilty of destroying photos of 5/14/25 injuries that were taken by Cpt. Heintz He is guilty of deliberate indifference, as is Nurse Sabotta, Jane Doe N-P, HSUM J. Wenzel, Nurse Sabotta is also guilty of retaliation for purposely falsifying legal docs, and cancelling my optical eye doctors appt. causing me (severe) pain in R. eye, seen blurry vision, headaches, etc, this is now a 42 USC 1983 against all defendants named in this appeal.

Dkt. No. 17-2 at 14, 16 (as in original). The CCE recommended dismissing WCI-2025-6950, and the Office of the Secretary dismissed the appeal. Dkt. No. 16 at ¶¶17, 19.

2. *WCI-2025-6356*

In complaint WCI-2025-6356, the plaintiff said that the date of incident was April 21, 2025, and he described his issue as follows:

> On the above date/time as I was being escorted back to my cell B-215, CO Thill informed me that Sgt. Nelson had confiscated all my legal work, and I needed to strip and give him my orange uniform. I then requested to speak to Sgt. Nelson, and requested to see a white shirt, when Sgt. Nelson arrived on the scene I explained that I had a new court deadline, and needed my legal papers back, Sgt. Nelson then snatched my legal papers out of my hands, and told me that we're going for a "walk", I then again requested to see a white shirt and Sgt. Nelson (flinched) at me as if he was gonna swing @ me, and thought better of do to the hallway cameras, then suddenly he went through my left side, and entered my cell in order to concealed himself, as he then reached around my neck, and started pulling it (sideways) in attempt to <u>break</u>, he did this (3-4) times, as he kept yelling at me to "stop resisting" over/over again, and (all) I could say was <u>I'm not</u> resisting, Sgt. Nelson then proceeded to punch me on my sides, and neck area as he kept repeating (saying) stop resisting,

> Lt. Nelson, CO Martin, CO II Bloomberg arrived on the scene and assault stopped.

Dkt. No. 27-1 at 10, 12 (as in original).

The ICE summarized WCI-2025-6356 as complaining about excessive force by Sgt. Nelson and said that because the institution was conducting a use-of-force review, there was no need for the ICE to conduct a simultaneous investigation, Id. The ICE recommended that the complaint be dismissed, and the reviewing authority accepted that recommendation. Id. at 4-5.

The plaintiff submitted an appeal in which he said that the ICE did not properly investigate the allegations in his inmate complaint and that the complaint was prematurely dismissed. Id. at 22, 24. At the end of the plaintiff's appeal, he said that Nurse Andrea, Nurse Erin and NP Michelle K. failed to provide proper medical treatment, delayed treatment and falsified legal documents "in order to aid/assist RHU staff" who assaulted him. Id. at 24. The CCE said that the plaintiff complained about excessive force by Sgt. Nelson and recommended that the complaint be dismissed. Id. at 7. The Office of the Secretary accepted that decision and dismissed the appeal. Id. at 8.

B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable

substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

C. Discussion

The defendants contend that the plaintiff failed to exhaust administrative remedies regarding his claim in this case—that on April 21, 2025, he told the defendants that his neck was broken and that he needed an x-ray or an MRI and they laughed at him and told him that he would "heal up like a damn dog." Dkt. No. 15 at 9. The defendants assert that complaint WCI-2025-6950 did not put prison officials on notice of the plaintiff's claim against the defendants. Id. at 10. They state that although the plaintiff alerted the institution that he was unsatisfied with the response to his May 12, 2025 HSR and the care that he

received from his provider, Michelle K., he did not alert the institution of his grievances about the defendants' care or their alleged comments to him. Id.

The plaintiff responds that he misidentified defendant Bleecker as "Nurse Erin" in his appeals to the CCE for complaints WCI-2025-6590 and WCI-2025-6356. Dkt. No. 21 at 1. He states that for complaint WCI-2025-6590, on May 9, 2025, ICE C. Schmude "accepted one of at least two other potential related complaints to this lawsuit, that the plaintiff attempted to file, and she either returned, and or rejected, forcing him to then abandoned his original claims, and instead brought them up on appeal via (C.C.E.), corrections complaint examiner regarding the defendants[.]" Id. at 3 (as in original). Regarding complaint WCI-2025-6356, the plaintiff also states that Schmude accepted one of at least two other potential complaints related to this lawsuit that he tried to file, and she either returned or rejected them which forced him to abandon his original claim and bring them up via the CCE. Id. The plaintiff states that he filed dozens of HSR slips related to his claims in this lawsuit and other issues. Id. at 4. The plaintiff contends that he exhausted his administrative remedies. Id. at 5. He states that he put prison officials on notice of his claims based on his HSR slips and his CCE appeals. Id. at 7.

The defendants filed a reply in which they contend that, although the plaintiff exhausted WCI-2025-6356 and WCI-2025-6950 procedurally, these inmate complaints did not put the institution on notice of the plaintiff's claims against the defendants. Dkt. No. 26 at 1.

On May 18, 2026, the plaintiff filed a motion to introduce additional evidence. Dkt. No. 28. He asks to submit his inmate complaint and appeal for WCI-2025-6356, which he attaches to the motion. Id.; Dkt. No. 28-1. The defendants oppose the plaintiff's motion to introduce additional evidence which they construe as an unauthorized sur-reply. Dkt. No. 29 at 1. But the defendants submitted the plaintiff's complaint materials for WCI-2025-6356 along with their reply brief. Dkt. No. 27-1. Because the defendants already have submitted these materials, there is no need for the plaintiff to submit them, and the court will deny as moot his motion to introduce additional evidence.

The Prison Litigation Reform Act (PLRA) provides that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719

(7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to incarcerated individuals with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a). Before an incarcerated person may commence a civil action, he must exhaust all administrative remedies that the Department of Corrections (DOC) has promulgated by rule. Wis. Admin. Code §DOC 310.05. The ICRS is available for incarcerated individuals to "raise issues regarding policies, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code §DOC 310.06(1).

To use the ICRS, an incarcerated person must file a complaint with the ICE within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §DOC 310.07(2). Complaints submitted later than fourteen days after the event may be accepted for good cause. Id. The ICE shall accept, return or reject a complaint. Wis. Admin. Code §DOC 310.10(2). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint

or sends a recommendation to the "appropriate reviewing authority," who may recommend that the complaint be affirmed or dismissed in whole or in part. Wis. Admin. Code §§DOC 310.10(9) & 310.10(12). Within fourteen days after the date of the decision, an incarcerated individual may appeal the reviewing authority's decision to the CCE. Wis. Admin. Code §DOC 310.09(1). The CCE reviews the appeal and makes a recommendation to the Secretary of the DOC. Wis. Admin. Code §DOC 310.12(9). The Secretary shall affirm or dismiss the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code §DOC 310.13(2).

It is undisputed that the plaintiff fully exhausted complaints WCI-2025-6950 and WCI-2025-6356 procedurally. But neither of these complaints raised the issue that the plaintiff has raised in his claim against the defendants in this federal lawsuit.

"The PLRA exhaustion requirement ensures that 'a prison has received notice of, and an opportunity to correct, a problem' before being drawn into litigation." Jackson v. Esser, 105 F.4th 948, 958-59 (7th Cir. 2024) (quoting Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013)). Assuming that an incarcerated individual has taken all the administrative steps, his "complaint will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" Id. at 959 (quoting Schillinger v. Kiley, 954 F.3d 90, 995 (7th Cir. 2020)).

The plaintiff appears to contend that that he exhausted his claims because he mentioned Bleecker (misidentified as Nurse Erin) in his appeals to

the CCE. But raising an issue for the first time in an appeal does not fully exhaust a claim. See Lockett v. Cox, Case No. 16-CV-601, 2018 WL 1108703, at *5 (W.D. Wis. Feb. 27, 2018) (collecting cases); Monroe v. Koren, Case No. 20-C-229, 2021 WL 6197838, at *6 (E.D. Wis. Dec. 30, 2021) (raising a new issue in appeal to the CCE is insufficient to exhaust administrative remedies); see also Wis. Admin. Code §DOC310.12(3) (CCE will only address issues raised in the original complaint).

Although it is not entirely clear, the plaintiff appears to assert that he submitted an inmate complaint that raised the issue of his claim against Bleecker (along with other issues), but that the complaint was returned or rejected and he was forced to resubmit the complaint. To exhaust under Wisconsin's prison rules, inmate complaints must "[c]ontain only one issue per complaint, and shall clearly identify the issue." Wis. Admin. Code. §DOC 310.09(1)(e). An inmate complaint that is dismissed for procedural reasons, rather than addressed on the merits, does not exhaust an incarcerated individual's administrative remedies. See Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005) (citing Pozo, 286 F.3d at 1025); see also Durley v. Kacyon, Case No. 21-cv-154, 2022 WL 16530885, at *6 (E.D. Wis. Oct. 29, 2022). The plaintiff does not say that he resubmitted a complaint raising only the issue of his claim against the defendants. Although the complaint may have been submitted more than fourteen days after the occurrence giving rise to the complaint, a late complaint could have been accepted for good cause. See Wis. Admin. Code §DOC 310.07(2).

The plaintiff has failed to exhaust his administrative remedies. The court will grant the defendants' motion for summary judgment on exhaustion grounds and dismiss the case without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004).

## III. Conclusion

The court **GRANTS** the defendants' motion for summary judgment on exhaustion grounds. Dkt. No. 14.

The court **DENIES AS MOOT** the plaintiff's motion for leave to file amended complaint. Dkt. No. 19.

The court **DENIES AS MOOT** the plaintiff's motion for extension of time. Dkt. No. 19.

The court **DENIES AS MOOT** the plaintiff's motion to introduce additional evidence. Dkt. No. 28.

The court **GRANTS** the plaintiff's motion to dismiss defendant Krainyk, dkt. no. 33, and **DISMISSES** defendant Krainyk.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule

of App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court.* See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 27th day of October, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**